IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

96 APR -1 PM 2:50

CLERK-LAS CRUCES

CIV 96-0437 HB

JOE H. GALVAN-JHG

| | |
|---|---|
| DIAMOND BAR CATTLE COMPANY, a New Mexico Partnership; and | ) ) ) |
| LANEY CATTLE COMPANY, a New Mexico Partnership, | ) ) ) ) |
| PLAINTIFFS, | ) ) ) |
| V. | ) NO. _____ |
| UNITED STATES OF AMERICA; | ) ) ) |
| DAN GLICKMAN, Secretary of the United States Department of Agriculture; and | ) ) ) ) |
| JACK WARD THOMAS, Chief of the U.S.D.A. Forest Service, | ) ) ) ) |
| DEFENDANTS. | ) ) |

## PLAINTIFFS' ORIGINAL PETITION FOR DECLARATORY RELIEF

**COMES NOW** Plaintiffs, **DIAMOND BAR CATTLE COMPANY**, a New Mexico Partnership and **LANEY CATTLE COMPANY**, a New Mexico Partnership and for their complaint against Defendants, the **UNITED STATES OF AMERICA**; **DAN GLICKMAN**, Secretary of the United States Department of Agriculture; and **JACK WARD THOMAS**, Chief of the U.S.D.A. Forest Service would show unto the Court the following:

## JURISDICTION AND VENUE FOR THE CASE

1.  Jurisdiction in this Court over this action is established by 28 U.S.C. § 1331 because this action is civil in nature and arises pursuant to the Constitution, laws or treaties of the United States. Additionally, jurisdiction is conferred on this Court by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.  Venue in this Court over these parties is established by 28 U.S.C. § 1391 (b)(2) and (e)(2) because the United States and an agency thereof are defendants. Additionally, a substantial part of the events and omissions giving rise to this action occurred in the Gila National Forest within the State of New Mexico and all of the real property involved in this action is located within Catron, Grant, and Sierra counties, New Mexico.

3.  Diamond Bar Cattle Company and Laney Cattle Company have exhausted all administrative remedies available for the attempted resolution of these controversies or, in the alternative, there are no adequate administrative remedies available to resolve these issues. Without the intervention of this Court, Diamond Bar Cattle Company and Laney Cattle Company will either be in violation of the law, and subject to the imposition of penalties, or have their valid existing rights violated.

## PARTIES TO THE CASE

4.  Plaintiff **DIAMOND BAR CATTLE COMPANY** (hereinafter "Diamond Bar") is a New Mexico partnership authorized to do business, and doing business, as a cattle ranch located in Catron, Grant, and Sierra counties, New Mexico. Kit and Sherry Laney are the owners of Diamond Bar

and are responsible for the daily operations and overall financial success of Diamond Bar. Diamond Bar is comprised of 115 acres of private property owned in fee simple title by Diamond Bar as well as 146,470 acres of Forest Reserve land located within the Gila National Forest. The Forest Reserve land located within Diamond Bar is designated as the "Diamond Bar Allotment" by the U.S.D.A. Forest Service.

5. Plaintiff **LANEY CATTLE COMPANY** (hereinafter "Laney") is a New Mexico partnership authorized to do business, and doing business, as a cattle ranch in Catron County, New Mexico. Kit and Sherry Laney are the owners of Laney and are responsible for the daily operations and overall financial success of Laney. Laney is comprised of 64 acres of private property owned in fee simple title by Laney as well as 27,926 acres of Forest Reserve land located within the Apache National Forest. The Forest Reserve land located within Laney is designated as the "Laney Allotment" by the U.S.D.A. Forest Service.

6. Defendant **UNITED STATES OF AMERICA** (hereinafter "U.S.A.") is the Federal government of the United States and is responsible for the creation, direction, and supervision of the United States Department of Agriculture and the U.S.D.A. Forest Service.

7. Defendant **DAN GLICKMAN** is the Secretary of the United States Department of Agriculture (hereinafter "Agriculture") and is responsible for the direction and supervision of all operations and activities of Agriculture including those actions taken by the U.S.D.A. Forest Service.

8. Defendant **JACK WARD THOMAS** is the Chief of the U.S.D.A. Forest Service (hereinafter "Forest Service"), an agency within Agriculture,

and is responsible for the direction and supervision of all operations and activities undertaken by Forest Service.

9. There are no other interested parties to this action as that phrase is used in the Federal Declaratory Judgment Act. 28 U.S.C. § 2201.

## NATURE OF THE CONTROVERSY

10. This action is brought seeking a Declaratory Judgment as to the rights and other legal relations between Plaintiffs and Defendants. The actual substantial justiciable controversies which now exist between the parties are:

(A) The ownership, by Diamond Bar and Laney, of sufficient permanent living water for proper maintenance of the cattle owned by Diamond Bar and Laney. Forest Service contends Diamond Bar and Laney own no such water rights.

(B) The ownership, by Diamond Bar and Laney, of valid vested existing rights in the range for cattle raising purposes on the lands upon which Diamond Bar and Laney are located. Forest Service contends Diamond Bar and Laney have no such rights in the range.

(C) The jurisdiction of Agriculture and Forest Service over Diamond Bar and Laney. Agriculture and Forest Service contend they have the jurisdiction and authority to dictate the number of cattle which Diamond Bar and Laney can raise, the improvements they can make, the rotation of their herds, and any and all other management decisions of Diamond Bar and Laney.

(D) The applicability of the State of New Mexico fencing laws to lands purchased by U.S.A. which are administered by Forest Service. Forest

Service contends it has no duty to comply with the State of New Mexico fencing laws. § 77-16-1 NMSA 1978 (1993 Repl.)

## FACTS OF THE CASE

### *The Ranching Origins*

11. Diamond Bar traces its origins back to 1883 when 16 homesteads were established under the Homestead Act. Homestead Act of June 2, 1862, 12 Stat. 413. The principal activity of all such homesteads was cattle raising.

12. On December 28, 1886, Edwin D. Davisson, James R. Moore, Minter A. Bailey, James A. Gill, and Thomas J. Moore incorporated the Diamond Creek Land and Cattle Company and consolidated ten of the homestead ranching units. Diamond Creek Land and Cattle Company established a headquarters for its ranching operations on Diamond Creek. By the 20th of January 1892 the Diamond Creek Land and Cattle Company was raising at least 2,000 head of cattle on what is now Diamond Bar. Diamond Bar is still using the original Diamond Creek Land and Cattle Company headquarters for its ranching operations.

13. Records show that the Diamond Bar brand for the purpose of cattle identification was already in use before 1889 by Frederick Newman on 460 head of cattle. Upon consolidation of four homestead ranching units, Newman went into partnership with William D. Murray and Samuel McAnnish and established a headquarters for their ranching operations in Black Canyon. By February of 1892 Newman, Murray and McAnnish were raising at least 500 head of cattle under the Diamond Bar brand in the Upper Black Canyon area of Diamond Bar. Diamond Bar is still using the original Black Canyon

headquarters for its ranching operations and the Diamond Bar brand has been in continuous use for cattle identification purposes from 1889 until the present.

14. During the period 1897-1898 Hugh L. Hodge purchased the Newman Partnership and the Diamond Creek Land and Cattle Company and consolidated them, along with other homestead ranching units, into one operation named the Diamond Bar Ranch.

15. The Laney family began raising cattle on the public domain lands of the United States adjacent to Luna, New Mexico beginning in 1883 and the Laney family has continually utilized such lands for raising cattle since that date.

*The Water Rights*

16. In 1866 the Congress of the United States recognized the need to protect the interest of those who had legally appropriated water:

> "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same;..." The Mining Act of 1866, 14 Stat. 253, July 26, 1866.

17. Recognition of these vested rights to the water by U.S.A. were supported by good and sufficient consideration, and such vested rights to the water were recognized by U.S.A. in order to further its governmental purposes.

18. Between 1883 and 1899 the original homestead ranching units, Diamond Creek Land and Cattle Company, the Newman Partnership, and Diamond Bar Ranch purchased, claimed, and appropriated permanent living water, pursuant to local customs, laws, and decisions of the Courts, sufficient

for the proper maintenance of at least 2,500 head of cattle on what is now Diamond Bar.

19. Between 1883 and 1899 the Laney family purchased, claimed, and appropriated permanent living water, pursuant to local customs, laws, and decisions of the Courts, sufficient for the proper maintenance of at least 100 head of cattle on what is now Laney. Subsequent to 1899 the Laney family purchased additional water rights in the open market sufficient for the proper maintenance at least 475 head of cattle on what is now Laney.

20. The ownership of water rights by Diamond Bar and Laney are determined by the laws of the State of New Mexico.

21. Diamond Bar is now the current legal owner and holder of valid vested existing right to sufficient permanent living water for the proper maintenance of up to 2500 head of cattle on the range on which Diamond Bar is located.

22. Laney is now the current legal owner and holder of valid vested existing rights to sufficient permanent living water for the proper maintenance of up to 475 head of cattle on the range on which Laney is located.

23. U.S.A., Agriculture, and Forest Service possess no vested valid existing right to any permanent living water for cattle raising purposes on any Forest Reserve lands, unless they have purchased those rights in the open market like any other landowner.

24. U.S.A., Agriculture, and Forest Service possess no vested valid existing right to any permanent living water for cattle raising purposes on Diamond Bar or Laney.

### *The Range Rights*

25. In 1889 the Legislative Assembly of the Territory of New Mexico recognized the need to protect the interest of those who had legally stocked the range with cattle:

> "Hereafter in the Territory of New Mexico, any person, company, or corporation that may appropriate and stock a range upon the public domain of the United States, or otherwise, with cattle shall be deemed to be in possession thereof; provided, that such person, company or corporation shall lawfully possess or occupy, or be the lawful owner or possessor of sufficient living, permanent water upon such range for the proper maintenance of such cattle." General Laws of New Mexico Ch. 61, § 1, February 15, 1889

26. Recognition of these vested rights in the range for cattle raising purposes by U.S.A. were supported by good and sufficient consideration, and such vested rights were recognized by U.S.A. in order to further its governmental purposes.

27. The Congress of the United States approved such Territorial Act and it became part of the laws of the State of New Mexico upon statehood in 1912 and is a current statute of the laws of the State of New Mexico today. § 19-3-13 NMSA (1978).

28. Diamond Bar is now the current legal owner and holder of the valid vested existing right in the range for cattle raising purposes on which Diamond Bar is located.

29. Laney is now the current legal owner and holder of the valid vested existing right in the range for cattle raising purposes on which Laney is located.

30. Agriculture and Forest Service have refused to recognize the valid vested existing rights to the water and in the range held by Diamond Bar and

Laney, and have demanded Diamond Bar and Laney sign documents, and take actions, which would waive, negate, diminish, and render ineffective such valid existing rights.

31. Agriculture and Forest Service have no jurisdiction over the rights to the water and in the range now legally held by Diamond Bar and Laney.

32. U.S.A., Agriculture, and Forest Service possess no vested valid existing right in the range for cattle raising purposes on any Forest Reserve lands, unless they have purchased those rights like any other landowner.

33. U.S.A., Agriculture, and Forest Service possess no vested valid existing right in the range for cattle raising purposes on Diamond Bar or Laney.

34. U.S.A. has passed no law since the original valid existing rights to the water and in the range vested, which have in any way diminished or decreased the valid vested existing rights now owned by Diamond Bar and Laney.

35. Any and all laws enacted by the Congress of the United States applicable to Diamond Bar and Laney are subject to the valid vested existing rights to the water and in the range now held by Diamond Bar and Laney.

36. Agriculture and Forest Service have promulgated no regulations applicable to the valid vested existing rights to the water and in the range currently held by Diamond Bar and Laney.

37. Any and all actions undertaken by U.S.A., Agriculture, and Forest Service are subject to the valid vested existing rights to the water and in the range currently held by Diamond Bar and Laney.

38. Any action taken by U.S.A., Agriculture, or Forest Service which in any way diminishes, reduces, or extinguish the rights to the water and in the range currently held by Diamond Bar and Laney would require the payment of just compensation by U.S.A. for such taking. U.S. Const. amend V.

*Forest Reserve Lands*

39. The authority of the President of the United States to create Forest Reserves from the public domain of the United States was established in 1891. Creative Act of 1891 (Ch. 561 26 Stat. 1103; 16 U.S.C. § 471).

40. The purposes for which the lands withdrawn from the public domain of the United States shall be utilized were established in 1897. The lands were reserved for the purposes of conserving the water flow and to furnish a continuous supply of timber for the people, and no other. The lands were not parks set aside for nonuse, but were established for economic reasons. Organic Administration Act of 1897 (Ch. 2, 30 Stat. 11, as amended: 16 U.S.C. §§ 473-475, 477-482, 551).

41. In 1899 President McKinley withdrew land from the public domain of United States and created the Gila River Forest Reserve, within which Diamond Bar and Laney were located. Presidential Proclamation of March 2, 1899.

42. The Legislature of the State of New Mexico has never approved the removal of the Gila River Forest Reserve lands from the public domain of the United States by U.S.A.

43. Prior to March 2, 1899, when the President of the United States withdrew land from the public domain of the United States to create the Gila River Forest Reserve, the Diamond Bar and Laney rights to the water and in

the range for cattle raising purposes had already vested in their predecessors in title.

44. Cattle raising had been an established historic use on the lands within the Gila River Forest Reserve now utilized by Diamond Bar and Laney for over 16 years prior to the establishment of the Gila River Forest Reserve in 1899.

45. In 1905 the responsibility for administrating the purposes for which the Forest Reserve lands had been withdrawn from the public domain of the United States was transferred from the United States Department of Interior to Agriculture, and Forest Service was established as that administrative agency. Act of February 1, 1905, 33 Stat. 628.

*The Open Market*

46. The validity of the Diamond Bar and Laney's rights in the range for cattle raising purposes, and the ownership of sufficient permanent living water to properly maintain their cattle, have been recognized by the open market in that they have been inherited, mortgaged, taxed, bought, and sold since 1883.

47. Since establishment of cattle raising operations by the homesteaders, the Newman partnership, Diamond Creek Land and Cattle Company, and Diamond Bar Ranch in the late 1880's, what is now Diamond Bar has always been bought and sold as a cattle ranching operation.

48. Since establishment of cattle raising operations by the Laney family in 1883, what is now Laney has always been bought, sold, and inherited as a cattle ranching operation.

49. The rights owned by Diamond Bar and Laney have been essential to every sale or purchase of the ranch properties which have taken place since 1883. Without the recognition of these rights by the open market, no sale of these ranches would have ever taken place, and Diamond Bar and Laney would have no value as ranching units today.

*Forest Service Demands*

50. Forest Service has demanded Diamond Bar reduce its herd to 300 head of cattle.

51. If Diamond Bar reduced the number of cattle being raised to 300 head it would completely destroy the economic viability of Diamond Bar. Diamond Bar would be forced to default on its financial obligations to its mortgage holder and other creditors, declare bankruptcy, and cease doing business as an ongoing cattle ranching business.

52. Forest Service has consistently prevented Diamond Bar from making the necessary and reasonable improvements dictated by range conditions, even after Forest Service has ruled that such improvements are necessary, appropriate, and would result in no significant impact.

53. Such demands made on Diamond Bar by Forest Service are so fundamentally inconsistent with valid ranch management principles and would place such a financially impossible burden on Diamond Bar that it must be construed as an attempt by Forest Service to destroy Diamond Bar as a viable ranching operation.

54. Forest Service has demanded Laney remove all its cattle from its range for a period of one month.

55. Forest Service knows there is no place for Laney to put its cattle for a period of one month.

56. Such demand made on Laney by Forest Service is so fundamentally inconsistent with valid ranch management principles and places such a physically impossible burden on Laney that it must be construed as an attempt by Forest Service to destroy Laney as a viable ranching operation.

57. For the past decade the acts and decisions of Forest Service in its dealings with Diamond Bar have been arbitrary, capricious, manifestly contrary to its statutory authority, in violation of its contractual obligations, fundamentally inconsistent with responsible ranch management, and in violation of the valid existing rights held by Diamond Bar.

*The Fence*

58. In early 1994, at the request of Forest Service, U.S.A. paid $550,000.00 for 740.81 acres of private deeded land contiguous to 60 acres of private deed land owned by Diamond Bar.

59. Forest Service has refused to properly fence such tract, as required by State of New Mexico law. § 77-16-1 NMSA 1978 (1993 Repl.)

60. Forest Service has advised Diamond Bar that it must keep its cattle off of such tract or be guilty of trespass and subject to penalty.

61. It is the contention of Forest Service that it is not required to abide by New Mexico fencing laws on property purchased by U.S.A. which is administered by Forest Service.

## PROFESSIONAL FEES

62. Diamond Bar and Laney hereby incorporate by reference the allegations contained in paragraphs 1-61 as if fully set forth herein.

Case 1:96-cv-00437-WJ-LCS   Document 1   Filed 04/01/96   Page 14 of 15

Plaintiff's Original Petition for Declaratory Judgment

63. As a result of the wrongful acts of U.S.A., Agriculture, and Forest Service, Diamond Bar and Laney have been required to retain legal counsel and other professionals to advise them of their rights and to bring this action. Diamond Bar and Laney are entitled to recover reasonable attorney fees and other professional fees for trial and appeals of this action.

## RELIEF REQUESTED

DIAMOND BAR and LANEY request that upon final hearing, this Court award the following relief:

1. Declare Diamond Bar the valid lawful owner of permanent living water sufficient for the proper maintenance of up to 2500 head of cattle on the range upon which Diamond Bar is located;

2. Declare Diamond Bar the valid lawful owner of the range for cattle raising purposes upon which Diamond Bar is located;

3. Declare Laney the valid lawful owner of permanent living water sufficient for the proper maintenance of up to 475 head of cattle on the range upon which Laney is located;

4. Declare Laney the valid lawful owner of the range for cattle raising purposes upon which Laney is located;

5. Declare that Agriculture and Forest Service have no jurisdiction over the rights to the water and in the range now held by Diamond Bar and Laney;

6. Agriculture and Forest Service be permanently enjoined from interfering with the valid existing rights to the water and in the range for cattle raising purposes held by Diamond Bar and Laney;

7.  Agriculture and Forest Service be permanently enjoined from interfering with or preventing normal, necessary, and prudent improvements to the range used by Diamond Bar for cattle raising purposes;

8.  Declare that the fencing law of the State of New Mexico is applicable to U.S.A., Agriculture, and Forest Service on land purchased by U.S.A., and order Forest Service to properly fence the 740.81 acre tract;

9.  Award reasonable attorney's and other professional fees and costs; and

10. Such other and further relief to which Diamond Bar and Laney may be entitled.

RESPECTFULLY SUBMITTED,

*[signature]*

LARRY G. PATTON
P.O. Box 131
Luna, New Mexico 87824
(505) 547-2609 (ph/fx)
Texas Bar No. 15629500

ATTORNEY FOR DIAMOND BAR
CATTLE COMPANY AND LANEY
CATTLE COMPANY