IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIAMOND BAR CATTLE COMPANY
and LANEY CATTLE COMPANY,

    Plaintiffs,

vs.                                                                 Civ. No. 96-437-HB

UNITED STATES OF AMERICA;
DAN GLICKMAN, Secretary of
the United States Department
of Agriculture; and U.S.D.A.
Forest Service,

    Defendants.

**MEMORANDUM OPINION**

    This matter is before the Court on Defendants' Motion for Summary Judgment on Defendants' Counterclaims, filed August 5, 1996. The counterclaims request the following relief: (1) an injunction prohibiting unauthorized grazing by Plaintiffs' livestock on National Forest Systems lands; (2) an order directing the removal of the unauthorized livestock; and (3) fees and damages flowing from the unauthorized use. Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is well taken and will be granted. The Court's granting of Defendants' motion disposes of Plaintiffs' action.

### I. **Jurisdiction**

    Although Plaintiffs characterize their action as one for a declaratory judgment, Plaintiffs' action is a quiet title action against the United States. The Quiet Title Act provides the sole

jurisdictional basis to establish title to land against the United States. <u>Block v. North Dakota</u>, 461 U.S. 273, 286 (1983). The Quiet Title Act of 1972, 28 U.S.C. § 2409a, provides a limited waiver of sovereign immunity that permits the United States to be named as a party defendant in a civil action "to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a. The Court has jurisdiction over Defendants' counterclaims pursuant to 28 U.S.C. § 1345.

## II. **Summary Judgment Standard**

This Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, <u>Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.</u>, 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, <u>Hicks</u>

v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. Celotex Corp., 477 U.S. at 324. If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. Id. at 322.

### III.  Factual Background

The United States of America, acting through the United States Department of Agriculture, Forest Service is the owner and manager of the Gila National Forest and the Apache National Forest which are components of the National Forest System[1] in the State of New Mexico. These lands are retained and managed by the United States of America pursuant to its powers under the Constitution, primarily the Property Clause, which gives Congress the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.

The Forest Service administers National Forest System lands for livestock grazing purposes in accordance with a number of federal statutes.[2] However, "all grazing and livestock use on

---

[1] The term "National Forest System" is defined at 16 U.S.C. § 1609(a) and includes, among other lands, all National Forest lands reserved or withdrawn from the public domain.

[2] These statutes include the following: (1) the Organic Act of 1897, 16 U.S.C. § 551; (2) the Granger-Thye Act, 16 U.S.C. § 580l, the National Forest Management Act, 16 U.S.C. § 1600 et seq.,

National Forest System lands . . . must be authorized by a grazing or livestock use permit."  36 C.F.R. § 222.3.

## A.  Laney Cattle Company

In 1985, the Forest Service issued a ten year term grazing permit to the Laney Cattle Company (LCC) authorizing it to graze a certain number of cattle on a specific allotment[3] of the Apache National Forest, subject to the terms and conditions of the permit. Specifically, the Forest Service authorized LCC to graze 158 cattle on the Laney Allotment, Luna Ranger District, from March 1 to February 28.  Permit Number 06-972 indicated an expiration date of December 31, 1995.  However, the Forest Service recently discovered that this date resulted in a permit term in excess of ten years, which is the maximum allowable under federal law.  The expiration date of Permit Number 06-972 should have been March 13, 1995.

---

the Federal Land Policy and Management Act, 43 U.S.C. § 1701 <u>et seq.</u>, the Public Rangelands Improvement Act, 43 U.S.C. § 1901 <u>et seq.</u>, the Multiple Use Sustained Yield Act, 16 U.S.C. § 528 <u>et seq.</u>, the Endangered Species Act, 16 U.S.C. § 1531 <u>et seq.</u>, the Federal Water Pollution Control Act, 33 U.S.C. § 1251 <u>et seq.</u>, the National Environmental Policy Act, 42 U.S.C. § 4321 <u>et seq.</u>, the Archeological Resources Protection Act, 16 U.S.C. § 470aa <u>et seq.</u>, and the National Historic Preservation Act, 16 U.S.C. § 470 <u>et seq.</u> Range management regulations at 36 C.F.R. § 222 <u>et seq.</u> give the Forest Service additional authority to administer livestock grazing activities on National Forest System lands.

Where National Forest System lands have been congressionally designated as wilderness, the Forest Service must also refer to the Wilderness Act, 16 U.S.C. § 1131 <u>et seq.</u>, and regulations at 36 C.F.R. § 293 <u>et seq.</u> as additional authorities by which livestock grazing activities are administered.

[3]  The Forest Service defines an allotment as "a designated area of land available for livestock grazing."  36 C.F.R. § 222.1(b)(1).

LCC's authorized agent signed Permit Number 06-972. By signing the permit, the agent accepted the terms of the permit.[4]

Several times in 1995, the Forest Service notified LCC of the upcoming expiration of its permit and of the requirement that an Application for a Term Grazing Permit would need to be submitted and processed by the Forest Service before a new term grazing permit could be issued for the Laney Allotment.

In response to the Forest Service notification about the expiration of its permit, LCC advised the Forest Service that it had no intention of submitting an Application for a Term Grazing Permit because to do so would "violate its valid existing rights."

On December 31, 1995, LCC's permit expired. However, LCC has continued to graze its livestock on the Laney Allotment without a permit and has refused to apply for a new term grazing permit from the Forest Service.

### B. Diamond Bar Allotment

In 1986, the Forest Service issued a ten year term grazing permit, Permit Number 06-997, to Diamond Bar Cattle Company (DBCC) authorizing it to graze a certain number of cattle on a specific

---

[4] Immediately above the agent's signature, the permit states, "I HAVE REVIEWED AND ACCEPT THE TERMS OF THIS PERMIT." In addition, Clause 3 of the permit states in part:

> It is fully understood and agreed that this permit may be suspended or cancelled, in whole or in part, after written notice, for failure to comply with any of the terms and conditions specified in Parts 1, 2, 3, hereof, or any of the regulations of the Secretary of Agriculture on which this permit is based, or the instructions of Forest officers issued thereunder . . . .

allotment of the Gila National Forest, subject to the terms and conditions of the permit. Specifically, the Forest Service authorized DBCC to graze 1188 cattle and 10 horses on the Diamond Bar Allotment, Mimbres Ranger District, from March 1 to February 28.[5] Permit Number 06-997 indicated an expiration date of December 31, 1996, which resulted in a grazing permit with a term in excess of ten years, the maximum allowed under federal law. Permit Number 06-997 actually expired on January 14, 1996. DBCC's authorized agent signed the permit. Permit Number 06-997 contained the same language found in Permit No. 06-972.

DBCC claims it owns "vested and accrued rights to water and range for the purpose of raising livestock on what is now called the National Forest which lies within the boundaries of the Diamond Bar Ranch." On June 12, 1995, DBCC gave notice to the Forest Service of its recordation of a "Declaration of Real, Water, Grazing & Personal Property Rights" in the County Clerk's Offices in Catron, Grant and Sierra counties in the State of New Mexico. DBCC described the "Declaration of Real, Water, Grazing and Personal Property Rights" as follows:

> This document defines the valid livestock grazing and livestock watering rights of the geographical area known in the U.S. Forest Service records as the Diamond Bar Allotment in the Gila National Forest of New Mexico.

---

[5] While Permit Number 06-997 authorized grazing by 1188 head of cattle, 188 head of that total was held in suspension pending the completion of certain range improvements which were never completed. Thus, the permit authorized grazing for only 1,000 head of cattle.

6

In a letter to the Secretary of Agriculture, dated August 15, 1995, DBCC requested a meeting "to develop an orderly transition from federal management of our ranching operation to private management under state political sovereignty." On September 8, 1995, the Chief of the Forest Service responded to DBCC's August 15 letter and advised DBCC that a meeting to discuss the proposed transition of range management responsibilities from the federal to state government would not be "a productive or efficient use of time or energy" because the agency lacked the legal authority to engage in this type of transfer.

On February 7, 1996, the Chief issued a decision pertaining to the administration of the Diamond Bar Allotment which concluded, <u>inter alia</u>, that DBCC's grazing permit had expired on January 14, 1996, and instructed the agency to offer DBCC a new permit in accordance with Section 504 of the Rescissions Act.[6]

On February 26, 1996, DBCC informed the Forest Service it "was not willing to sign a grazing permit in its current form since that form requires us to voluntarily give up our valid existing

---

[6] In 1995, Congress passed a law intended to minimize the potential hardship to grazing permittees occasioned by a delay in receiving a new term grazing permit following the expiration of an old term grazing permit. Section 504 of the Rescissions Act, Public Law 104-19, required the Forest Service to, <u>inter alia</u>, issue new term grazing permits with the same terms and conditions as the expiring term grazing permits to permittees who had not received new permits upon expiration of the previous permit solely because the agency had failed to complete the analysis required by NEPA. In accordance with Section 504 of the Rescissions Act of 1995, the Chief of the Forest Service instructed the Forest Service supervisor to issue a new term grazing permit to DBCC with the same terms and conditions as the expired permit pending the completion of the analysis of the Diamond Bar Allotment Management Plan.

stockwatering and possessory grazing rights on the Diamond Bar Ranch." Ex. DB-25.

Following the expiration of its permit, DBCC continued to graze its cattle on the Diamond Bar Allotment without written authorization from the Forest Service. The Forest Service repeatedly warned DBCC that its unauthorized grazing was illegal and subject to fees. However, DBCC has failed to heed the Forest Service's warnings and continues to graze its cattle on the Diamond Bar Allotment without a permit. DBCC also has refused to apply for a new term grazing permit.

Because LCC and DBCC have refused to remove their livestock from the Gila and Apache National Forests, Defendants brought these counterclaims. Defendants claim Plaintiffs are trespassing on federal land and interfering with the Forest Service's efforts to rehabilitate federally owned rangeland. Defendants further assert Plaintiffs are "severely impairing" riparian and wilderness resources by their unauthorized and unregulated grazing activity. Defendants seek an order from this Court (1) directing the removal of Plaintiffs' unauthorized livestock from the National Forest lands, (2) enjoining any future grazing activities by Plaintiffs on the Gila and Apache National Forests lands without written authorization from the Forest Service, and (3) fees and damages for the unauthorized grazing activity.

Plaintiffs contend they are not trespassing on National Forest lands because they hold "valid existing property rights to the water and range for the purpose of raising livestock" on forest

8

lands. According to Plaintiffs, "both they and the government are vested private property owners" of the forest land in question. Plaintiffs claim they have private property rights (livestock watering and grazing rights) to the forest land which were appropriated from the public domain into individual ownership prior to the establishment of the Gila National Forest and the creation of the Forest Service. Simply stated, Plaintiffs claim they previously appropriated the water and the range in accordance with New Mexico state law and thus they have a vested right to the water and the forage.

## IV.   Discussion

### A.   Ownership of Forest Lands

The United States acquired the federal lands that comprise the Apache and Gila National Forests under the Treaty of Guadalupe Hidalgo. In accordance with the Creative Act of 1891, President William McKinley, by Proclamation of March 2, 1899, created the Gila River Forest Reserve from the public lands in the New Mexico Territory. 16 U.S.C. § 471.[7] President Theodore Roosevelt changed the name to the Gila Forest Reserve by Proclamation in 1905. The Datil National Forest was established by presidential proclamation in 1908 by transferring land from the Gila National Forest. In 1925, the Datil National Forest was transferred to and merged with

---

[7] The Creative Act of 1891 was repealed by Section 704(a) of the Federal Land Policy and Management Act of 1976. P.L. 94-579.

9

the Apache National Forest by proclamation of President Calvin Coolidge.

The Forest Service originally established the Diamond Bar Allotment in 1908 as an administrative unit of the Gila National Forest. Eighty-five percent of the 145,580 acre Diamond Bar Allotment is within the Aldo Leopold Wilderness and the Gila Wilderness. In 1980, Congress designated the portions of the Aldo Leopold Wilderness and Gila Wilderness presently within the Diamond Bar Allotment as wilderness. 94 Stat. 3221. The Forest Service established the Laney Allotment in 1933 as an administrative unit of the Apache National Forest. There is no designated wilderness within the 27,926 acre Laney Allotment.

On June 20, 1910, the United States Congress enacted the New Mexico Enabling Act, 36 Stat. 557, 558 (1910), authorizing the residents of the New Mexico Territory to elect representatives to a constitutional convention for the purpose of admitting New Mexico to the Union. Among its provisions, the Act granted certain tracts of United States public lands to New Mexico when it entered the Union. The Act required the convention to adopt an ordinance, "irrevocable without the consent of the United States and the people of [New Mexico]," agreeing and declaring that the inhabitants of the Territory of New Mexico "forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof."

New Mexico's Constitutional convention accepted Congress' invitation to become a State and passed the Constitution of the

State of New Mexico which states in relevant part, "[t]hat the people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof." New Mexico Const. Art. XXI, § 2.  Upon receipt of the State Constitution ratified by the inhabitants of the New Mexico Territory and the Ordinance disclaiming all unappropriated public lands in the Territory, New Mexico was admitted to the Union on an equal footing with the original States by presidential proclamation in 1912.  37 Stat. 1723.

### B. Management of Grazing Activities on National Forest System Lands

The Forest Service administers the National Forest System under various statutes.  The Organic Administration Act of 1897, 30 Stat. 34, 16 U.S.C. § 473 et seq., provides that lands may be reserved as National Forests.  Pursuant to the Organic Administration Act, the Secretary of Agriculture may issue rules and regulations concerning the National Forests.[8]  In 1906, the Secretary of Agriculture issued regulations requiring persons desiring to graze stock in the National Forests to secure a permit from the Forest Service.  United States v. Grimaud, 220 U.S. 506, 509 (1911).

---

[8] The Secretary of the Interior initially administered the National Forests.  The Transfer Act of 1905 transferred the administration of the National Forests to the Secretary of Agriculture in 1905.  Transfer Act of 1905, 33 Stat. 628, 16 U.S.C. § 472.

11

The Granger-Thye Act of 1950, 64 Stat. 88, provides independent authority for the Forest Service to issue permits for grazing on National Forest lands. Section 19 of that statute, 16 U.S.C. § 580l, states:

> The Secretary of Agriculture in regulating grazing on the national forests and other lands administered by him in connection therewith is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof: <u>Provided</u>, That nothing herein shall be construed as limiting or restricting any right, title or interest of the United States in any land or resources.

In 1976, Congress enacted the National Forest Management Act (NFMA), 16 U.S.C. § 1600 <u>et. seq.</u>, which requires the preparation of land and resource management plans for each unit of the National Forest System. Plans developed in accordance with the NFMA must "form one integrated plan for each unit of the National Forest System." 16 U.S.C. § 1604(f)(1). Among other things, NFMA requires that "permits . . . for the use and occupation of National Forest System lands shall be consistent with the land management plans." 16 U.S.C. § 1604(i).

Additionally, Section 402(a) of Federal Land Policy Management Act of 1970 (FLPMA), 43 U.S.C. § 1752(a), provides that, subject to certain exceptions, livestock grazing permits issued for National Forests in the sixteen contiguous Western states, which includes New Mexico, shall be for a term of ten years. Section 402(a) further provides that such grazing permits shall be:

> subject to such terms and conditions the Secretary concerned deems appropriate and consistent with the governing law, including, but not limited to, the authority of the Secretary concerned to cancel, suspend,

or modify a grazing permit or lease, in whole or in part, pursuant to the terms and conditions thereof, or to cancel or suspend a grazing permit or lease for any violation of a grazing regulation or of any term or condition of such grazing permit or lease.

The Department of Agriculture's regulations concerning grazing on National Forest System lands are published at 36 C.F.R. Part 222. The regulations caution that grazing permits "convey no right, title, or interest held by the United States in any lands or resources." 36 C.F.R. § 222.3(b). The regulations also state that the terms and conditions of a grazing permit can be modified "to conform to current situations brought about by changes in law, regulation, executive order, development or revision of an allotment management plan, or other management needs." 36 C.F.R. § 222.4(a)(7). In addition, the regulations provide that the Forest Service may cancel or suspend, in whole or in part, any grazing permit "if the permittee does not comply with provisions and requirements in the grazing permit or the regulations of the Secretary of Agriculture on which the permit is based." 36 C.F.R. § 222.4(a)(4).

The terms and conditions in a Forest Service grazing permit include, but are not limited to, the number of livestock to be grazed, the allotment(s) where the grazing activity may occur, and the permitted grazing season. In order to receive a new term grazing permit upon the expiration of the previous term grazing permit, a permittee must submit an "Application for a Term Grazing Permit" to the Forest Service. An expiring term grazing permit holder has first priority for receipt for a new permit provided

that the permittee had been in compliance with the terms and conditions of the expiring permit.

Grazing without Forest Service authorization on National Forest lands is subject to assessment of an "unauthorized grazing use" rate. 36 C.F.R. § 222.50(h). Forest Service policy specifies that the rate for unauthorized use is based on the full commercial value of leased forage, unadjusted for differential operating costs for grazing National Forest System lands and leased private rangelands. Id.; see also, Declaration of Russell Ward at ¶ 35.

C. **Analysis**

"It is well-settled that historical grazing practices on public land was a privilege and conferred no legal right on the user." United States v. Gardner, 903 F.Supp. 1394, 1402 (D.Nev. 1995)(citing Buford v. Houtz, 133 U.S. 320 (1890)); see also, Osborne v. United States, 145 F.2d 892, 894 (9th Cir. 1944)(United States' tacit consent to use of public lands by stockmen for grazing did not confer any vested rights on them). Further, in Gardner v. Stager, 892 F.Supp. 1301, 1303 (D.Nev. 1995), the Court expressly rejected the plaintiffs' argument that their predecessors acquired vested water rights on national forest lands and that grazing right are "appurtenant" to such water rights. Therefore, Plaintiffs' contention that they hold "valid existing property rights to the water and range for the purpose of raising livestock" on forest lands because their predecessors grazed stock on the land

at issue in the 1880's is without merit.[9]  Moreover, whether Plaintiffs own certain water rights[10], in accordance with New Mexico law (the law of prior appropriation), does not change the fact that such rights do not deprive the Forest Service of its statutory authority and responsibility to regulate the use and occupancy of National Forest System lands for livestock grazing through the issuance of grazing permits.

(1)  **Trespass**

Trespass is defined as an entry upon the real estate of another without the permission or invitation of the person lawfully entitled to possession.  Restatement (Second) of Torts §§ 158-159 (1965).  One who, without right, enters public lands of the United States is a trespasser.  United States v. Osterlund, 505 F. Supp. 165, 167 (D.Colo. 1981), aff'd, 671 F.2d 1267 (10th Cir. 1982). With respect to its own land, the government has the right of an ordinary proprietor, to maintain its possession and to prosecute trespassers.  Camfield v. United States, 167 U.S. 518, 524 (1897). It may deal with such lands precisely as a private individual may deal with his property.  Id.

It is clear that the United States owns the Gila National Forest and the Apache National Forest.  It also is clear that the

---

[9] Plaintiffs make other arguments to support their position, however, these arguments merit no discussion. See Ex. DB-4.

[10] The Court does not need to address the issue of whether Plaintiffs appropriated the water in accordance with New Mexico law in order to grant the United States' motion for summary judgment because it is not a material fact requiring resolution.

15

Forest Service, pursuant to statutory authority, administers these lands for livestock grazing. Moreover, such grazing use requires that an individual secure written authorization in the form of a grazing permit before placing livestock on National Forest lands. Plaintiffs do not dispute that their cattle are grazing on National Forest lands without written authorization from the Forest Service. Based on the foregoing, the Court finds that Plaintiffs are trespassing on federal land. Accordingly, the United States Motion for Summary Judgment will be granted. Plaintiffs' Complaint will be dismissed with prejudice. Plaintiffs will be enjoined from grazing their livestock on the Gila National Forest and the Apache National Forest, until such time as the United States through the Forest Service, under its laws and regulations, shall authorize such grazing. Defendants shall have judgment against Plaintiffs. Defendants have twenty (20) days to submit an affidavit to the Court outlining the amount of damages and the fees claimed by Defendants pursuant to 36 C.F.R. § 222.50(h) for unauthorized grazing use. Plaintiffs shall have 20 days thereafter to contradict by affidavit the amount claimed by Defendants, and, if necessary, the matter will be set for hearing. The Motion to Intervene will be dismissed as moot.

A Judgment in accordance with this Memorandum Opinion shall be entered when the damages issue is resolved.

                                             _____
                                             HOWARD C. BRATTON
                                             District Judge