IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIAMOND BAR CATTLE COMPANY, et al.,

    Plaintiffs,

vs.                                                                                              Civil No. 96-437

UNITED STATES OF AMERICA, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER ON THE PRECLUSIVE
EFFECT OF THE COURT'S ENTRY OF DEFAULT
AND ORDER TO SHOW CAUSE
WHY THE LANEYS SHOULD NOT BE HELD IN CONTEMPT**

THIS MATTER comes before the Court pursuant to the Court's Memorandum Opinion Order filed October 2, 2003 [Docket No. 87] ordering briefing by the parties and pursuant to the parties' briefs filed in compliance with that Memorandum Opinion and Order [Docket Nos. 88, 94, 95].

**BACKGROUND**

At this stage of the case, the Court finds that it would be helpful to give an overview of this litigation since its inception in 1996. The original Plaintiffs in this action were two partnerships, the Diamond Bar Cattle Company and Laney Cattle Company.[1] These Plaintiffs and their predecessors in title had grazed cattle on the land at issue in this case, the Laney Allotment

---

[1] Kit and Sherry Laney are and were the owners and operators of the partnerships Diamond Bar Cattle Company and Laney Cattle Company. See Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1210 (10th Cir. 1999). However, they were not individual parties to this action until September 23, 2003.

and the Diamond Bar Allotment,[2] since 1883.  The companies had historically grazed their cattle on government lands by obtaining permits.  The first such permits were issued to Plaintiffs' predecessors in 1907.  In 1985, the Forest Service issued a ten year permit allowing Laney Cattle Company to graze cattle on the Laney Allotment.  In 1986, the Forest Service issued a ten year permit allowing Diamond Bar Cattle Company to graze cattle on the Diamond Bar Allotment.  As the expiration dates of these permits approached, the Forest Service notified the respective companies of the upcoming expirations.  However, neither company renewed its permit, and the permits each expired by their terms in 1995 and 1996.  Each company offered to pay the requested grazing fees and negotiate new permits that recognized the companies' "valid existing rights."

In requesting that any new permit recognize a "valid existing right," Plaintiffs alleged they were the owners of vested water rights that were obtained through prior appropriation before the United States withdrew from the public domain in 1899 the land that subsequently became the Gila National Forest.  Plaintiffs claimed that the water rights included inseparable possessory rights to graze the Laney Allotment and Diamond Bar Allotment.  Plaintiffs alleged that they obtained their property rights under New Mexico law, and, as a result, they did not need to obtain grazing permits from the federal government after the land was withdrawn from the public domain.

The United States Forest Service denied that Plaintiffs had any private property rights with regard to the Laney Allotment or the Diamond Bar Allotment and advised Plaintiffs that refusal to

---

[2]The names of these allotments are not indicia of ownership or interest.  See Diamond Bar Cattle Co., 168 F.3d at 1217.

complete applications for grazing permits would result in the assessment of unauthorized grazing fees and removal of Plaintiffs' livestock from the Laney Allotment and Diamond Bar Allotment.

Plaintiffs filed the original Complaint in this case on April 1, 1996. The Complaint sought a declaration that Plaintiffs were the valid lawful owners of sufficient water for the proper maintenance of Plaintiffs' livestock and "valid existing rights" in the Laney Allotment and Diamond Bar Allotment for purposes of grazing livestock. The Complaint also sought a declaration that the Department of Agriculture and Forest Service had no jurisdiction over the rights to water and range on the Diamond Bar Allotment or the Laney Allotment. Plaintiffs requested a permanent injunction against the Forest Service to prevent interference with Plaintiffs' "valid existing rights."

The United States filed an Answer and Counterclaim on June 12, 1996. In its Counterclaim, the United States sought damages from Plaintiffs for trespass and unauthorized grazing use. Additionally, the United States sought to enjoin Plaintiffs from unauthorized and unlawful use for livestock grazing purposes any property owned by the United States. On August 5, 1996, the United States filed a Motion for Summary Judgment on its Counterclaims. On December 4, 1996, the Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, filed a Memorandum Opinion and Order granting the United States' Motion for Summary Judgment and dismissing Plaintiffs' Complaint with prejudice. See Docket No. 26. In entering summary judgment, Judge Bratton held that Plaintiffs obtained no legal right of possession or use of the Laney Allotment or the Diamond Bar Allotment merely because their predecessors historically grazed livestock on the land. The Memorandum Opinion and Order enjoined Plaintiffs from grazing livestock in the Gila and Apache National Forests until they

obtained authorization from the Forest Service.  On April 3, 1997, Judge Bratton filed a Judgment in favor of the United States in the amount of $55,778.87 for unauthorized grazing fees and other damages for Plaintiffs' unlawful grazing on National Forest Service lands through February 28, 1997, awarded an additional $124.70 per day for unlawful grazing after February 28, 1997, and ordered Plaintiffs to physically remove livestock from National Forest Service lands according to a specified schedule.  See Docket No. 44.

On April 30, 1997, Plaintiffs filed a Notice of Appeal.  See Docket No. 45. On February 23, 1999, the United States Court of Appeals for the Tenth Circuit issued an opinion affirming Judge Bratton's summary judgment in favor of the United States.  Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1217 (10th Cir. 1999).  In affirming, the Tenth Circuit held that New Mexico law regarding range and water rights in public domain land did not create or intend to create a property right in public land superior or equal to the federal government's rights in such land.  Id. at 1213-14 (citing N.M. Stat. Ann. 1978 § 19-3-1; Yates v. White, 235 P. 437 (N.M. 1925); Hill v. Winkler, 151 P. 1014 (N.M. 1915)).  Additionally, the Tenth Circuit found that, while federal law recognizes the validity of private water rights obtained pursuant to state law, this recognition does not include a federal recognition of private property rights in federal land by virtue of the water rights.  Diamond Bar Cattle Co., 168 F.3d at 1215 (citing Hunter v. United States, 388 F.2d 148, 151 (9th Cir. 1967)).  Ultimately, the Tenth Circuit held that "Plaintiffs do not now hold and have never held a vested property right to graze cattle on federal public lands."  Diamond Bar Cattle Co., 168 F.3d at 1217.

After the Tenth Circuit issued its opinion, Judge Bratton issued an Order permitting the disbursement of a supersedeas bond in the amount of $88,000.  See Docket No. 52.  On

November 26, 2001, the United States filed a Satisfaction of Judgment indicating that all livestock had been removed from the federal lands and that the Partnership Plaintiffs had fully paid the damages in the 1997 judgment.  See Docket No. 54.

On March 31, 2003, the Laney Cattle Company filed in Catron County, New Mexico a Declaration of Ownership declaring that it owned the Laney Allotment.  On the same date, the Laney Cattle Company, by Warranty Deed filed in Catron County, granted to Kit and Sherry Laney its "fee interest" in the Laney Allotment.  Kit and Sherry Laney signed the Warranty Deed on behalf of the Laney Cattle Company.

On April 14, 2003, the Diamond Bar Cattle Company filed in Catron County a Declaration of Ownership declaring that it owned the Diamond Bar Allotment.  On the same date, by three separate Warranty Deeds filed in Catron, Grant and Sierra Counties, New Mexico, respectively, the Diamond Bar Cattle Company sold its "fee interest" in the Diamond Bar Allotment to Kit and Sherry Laney.  Kit and Sherry Laney signed the Warranty Deeds on behalf of the Diamond Bar Cattle Company.  On April 15, 2003, the Diamond Bar Cattle Company sold its brand and all of its livestock to Kit and Sherry Laney.

In mid-April of 2003, John D. Pierson, District Range Staff Officer of the Quemado Ranger District, was made aware of possible unauthorized livestock on the Laney Allotment.  Also in mid-April, Jerry A. Monzigo, Forest Fisheries Biologist for the Gila National Forest, was made aware of possible unauthorized livestock on the Diamond Bar Allotment.  Pierson observed cattle on the Laney Allotment on May 24, 2003.  These cattle bore brands registered to an Alvin Laney.  Monzigo observed cattle on the Diamond Bar Allotment on April 23, 2003.  These cattle

bore various brands registered to Diamond Bar Cattle Company, Kit Laney and Sherry Laney, respectively.

On May 6, 2003, Kit Laney sent a letter to Annette Chavez of the Wilderness Ranger District. In this letter, Kit Laney asserted that the Laneys own a fee interest in the Diamond Bar Allotment, stated that the Diamond Bar Allotment is not federally owned land, and advised that, in light of this, the United States should forego any action with regard to cattle on the Diamond Bar Allotment. On May 20, 2003, Kit Laney sent a letter to Janice Stevenson of the Quemado Ranger Disrict. This letter, similar to the May 6 letter, stated that the Laneys own a fee interest in the Laney Allotment and contended that the Laney Allotment is not federal land. This letter informed the United States that the Laneys had leased their fee interest in the Laney Allotment to Alvin Laney and urged the United States to take no action with regard to Alvin Laney's cattle on the Laney Allotment because the Laney Allotment is not federal land.

On June 9, 2003, the United States filed a motion for Order to Show Cause why Plaintiffs should not be held in contempt for violation of the final judgment in this case [Docket No. 55].[3] On July 17, 2003, Kit and Sherry Laney filed *pro se* responses to this motion on behalf of the Diamond Bar Cattle Company and the Laney Cattle Company (hereinafter "Partnership Plaintiffs) [Docket Nos. 61 and 62]. The Laneys argued in the Responses that the Partnership Plaintiffs cannot be in violation of the final judgment because the land on which the cattle are running is not legally defined as national forest system lands in that it was deeded to the Laneys who legally and lawfully filed the deeds in accordance with New Mexico law. The Laneys also asserted that the

---

[3]Judge Bratton died in 2002. As a result, this case was randomly reassigned to the undersigned.

Partnership Plaintiffs cannot be in contempt of Court or be trespassing on federal lands because the Partnerships are no longer in the cattle business and have not owned any cattle since April 15, 2003.

The Clerk of Court sent the Laneys a letter informing them that partnerships must be represented by counsel and may not appear *pro se*. On August 13, 2003, an attorney entered his appearance on behalf of the Partnership Plaintiffs.

On August 20, 2003, the Laneys signed notices of Dissolution of Partnership for both the Laney Cattle Company and the Diamond Bar Cattle Company. These notices were filed in Catron County on August 29, 2003. Also on August 29, Kit and Sherry Laney filed with this Court a Notice of Substitution of Parties in which the Laneys attempted to unilaterally substitute themselves individually and act *pro se* as parties in lieu of the Partnership Plaintiffs. In the Notice, the Laneys asserted that they are the alter egos of the Partnership Plaintiffs. Attached to the Notice was a letter from the Laneys to the attorney for the Partnership Plaintiffs in which the Laneys terminated the attorney's representation of the Partnership Plaintiffs. On September 3, 2003, this Court filed an Order construing the pleading as a motion by the Laneys to be substituted or joined as parties, permitting the United States to file a Response to the motion, and ordering the Partnership Plaintiffs to maintain legal representation [Docket No. 71]. The United States filed a Response in which it did not object to the Laneys being joined, individually, as parties to this action. Thus, the Court entered an Order joining the Laneys, individually, as parties to this action [Docket No. 74]. The Court's Order expressly stated that the Partnership Plaintiffs would remain as Plaintiffs in the action and that they were required to maintain legal representation.

7

On September 23, 2003, the attorney for the Partnership Plaintiffs moved to withdraw as counsel. As grounds for withdrawal, the attorney stated that his services had been terminated by the Laneys. On October 1, 2003, the Court granted the motion. On October 2, 2003, the Court filed a Memorandum Opinion and Order finding the Partnership Plaintiffs in default based on the failure to maintain legal representation [Docket No. 87]. The Court further ordered briefing by the United States and the Laneys on the preclusive effect on the Laneys, if any, of the Partnership Plaintiffs' default.

The United States filed a brief in which it suggested that the Laneys are bound by the Court's Order of default just as they are bound by the Court's 1997 Judgment. The Laneys filed a brief arguing, once again, that they own a fee simple interest in the disputed lands.

**DISCUSSION**

I.   WHAT ISSUES ARE BEFORE THE COURT?

Putting aside for a moment the questions in this case regarding parties, the Court will briefly address what this case is about and, more importantly, what this case is not about. First, the Laneys continue to file documents in the case attempting to accept the Court's Orders for value and return them for settlement. The Laneys' Response to the Court's Order [Docket No. 94] states, "Laneys, for the record, again NOTICES [sic] the Court that the ORDERS issued by the Court in conjunction with the herein matter are hereby Accepted for Value and Returned for Settlement." In spite of what the Laneys may believe, this statement and statements like it are of no legal effect. Furthermore, this statement is non-responsive to the Court's Order for briefing in that it does not address any relevant issue in this case. The Court is not going to waste time considering matters that are of no consequence or legal effect or that are totally irrelevant to the

issues before the Court. Accordingly, the Court will disregard or strike from the record such statements, and the statements in the Laneys' Response are hereby stricken.

The Laneys' brief, rather than addressing issues of preclusion, argues that the Laneys own a fee simple interest in the federal lands. According to the Laneys, they obtained these interests by deeds from the Partnership Plaintiffs duly filed in accordance with New Mexico law, and the Partnership Plaintiffs allegedly obtained these interests by virtue of the vested water rights obtained through prior appropriation under New Mexico law.

While the Laneys posit that the real issue in this case is the rightful ownership of the "disputed" lands, the ownership of the lands is, in fact, no longer an issue and is settled law in this case. "The law of the case doctrine is based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided, so avoiding both a wasteful expenditure of resources by courts and litigating parties and the gradual undermining of public confidence in the judiciary." McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 (10th Cir. 2000). The "law of the case doctrine" states that when a court decides upon an issue of law, that decision controls in subsequent stages in the same case. Huffman v. Saul Holdings Ltd. Partnership, 262 F.3d 1128, 1132 (10th Cir. 2001). "The law of the case doctrine requires every court to follow the decisions of courts that are higher in the judicial hierarchy." Pittsburg County Rural Dist. No. 7 v. City of McAlester, 346 F.3d 1260, 1276 (10th Cir. 2003) (internal citation omitted). "The doctrine applies to issues previously decided, either explicitly or by necessary implication." Id. Further, the doctrine applies to the parties and their privies. See Gage v. General Motors Corp., 796 F.2d 345, 350 (10th Cir. 1986) (citing with approval 1B Moore's Federal Practice (2d ed. 1965) ¶

9

0.404 [7] which applies the law of the case doctrine to the same parties or their privies); Monfils v. Taylor, 165 F.3d 511, 520 (7th Cir. 1998); Cf. United States v. LaHue, 261 F.3d 993, 1010 (10th Cir. 2001) (finding defendants barred under law of the case doctrine from making an argument already raised by a codefendant and determined by the Court at an earlier stage of litigation).

      The Tenth Circuit has ruled in this case that the Partnership Plaintiffs' water rights under state law did not create a property interest in federal land. Diamond Bar Cattle Co., 168 F.3d at 1213-14, 15, 17.  The court expressly noted that the Partnership Plaintiffs were claiming a possessory property right to use of the land for raising livestock and were not claiming title or any real property interest in the land itself.  Id. at 1210.  However, the decision that the Partnership Plaintiffs obtained no property right in federal land by virtue of state law regarding water rights necessarily implied that the Partnership Plaintiffs did not obtain a fee interest by virtue of their prior appropriation of water rights under state law.

      The Laneys' acquired their asserted interest from the Partnership Plaintiffs by virtue of deeds filed on March 31, 2003 and April 31, 2003 in which the Partnership Plaintiffs "sold" their interests in the lands to the Laneys.  The Laneys could acquire only that which the Partnership Plaintiffs had a right to transfer by deed.  The law of the case dictates that the Partnership Plaintiffs had no ownership interests in these lands.  Consequently, nothing was transferred to the Laneys by virtue of the deeds.  The doctrine of law of the case bars relitigation of the Partnership Plaintiffs' ownership interest in the Laney Allotment and the Diamond Bar Allotment and bars litigation of the Laneys' alleged interest in the land acquired by deed from the Partnership Plaintiffs.

II.     WHO IS THIS CASE ABOUT?

In their attempts to be joined as parties in this action, the Laneys admitted an identity and unity of interest among themselves, individually, and the Partnership Plaintiffs.  However, in urging that the 1997 Judgment has not been violated, the Laneys, through various transfers and other documents, have attempted to distance themselves from the Partnership Plaintiffs and argue that the Partnership Plaintiffs have not violated any of the Court's Orders because the Partnership Plaintiffs sold or otherwise transferred all of their assets, including livestock and brands, before livestock were returned to the federal lands, and the Partnership Plaintiffs could thus not have been responsible for the presence of the livestock on federal land.

At this stage of the case, the Partnership Plaintiffs are in default and have been, by virtue of the default, found to be in contempt of this Court for violation of the Court's 1997 Judgment. The only remaining issues are whether the Laneys are bound by the Court's 1997 Judgment and whether they can be held liable for any sanctions imposed on the Partnership Plaintiffs.

A.      Who is Bound by the 1997 Judgment of this Court and the Tenth Circuit's Decision Affirming this Court's Judgment?

If this were a new cause of action in which the United States sought a judgment against the Laneys, there is little doubt that the Laneys would be precluded from arguing that they are not bound by the 1997 Judgment.  The conclusive effect of a judgment applies to non-parties who are in privity with parties to an action.  Allen v. McCurry, 449 U.S. 90, 94 (1980) ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); Satsky v. Paramount Comm. Inc., 7 F.3d 1464, 1467 (10th Cir. 1993); Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d

11

359, 366 (2nd Cir. 1995) ("following entry of a valid final judgment, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.") (internal quotations and citations omitted); United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 697-8 (9th Cir. 1984) (holding partners bound by judgment against partnership under doctrine of collateral estoppel); In re Sovereign Partners, 179 B.R. 656, 661 (D. Nev. 1995); In re Wilcher, 56 B.R. 428 (N.D. Ill. 1985). Privy, for purposes of the conclusiveness of judgments "denotes a mutual or successive relationship to the same rights of property." Central Hudson Gas & Elec. Corp., 56 F.3d at 367-8; Gill's Case, 7 Ct. Cl. 522 (1871) (publication page reference not available). Privity exists if a nonparty either substantially controlled a party's involvement in the initial litigation or permitted the party to function as his de facto representative. Iannochino v. Rodolakis, 242 F.3d 36, 46 (1st Cir. 2001); Geophysical Corp., 732 F.2d at 697. "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." Restatement (Second) of Judgments § 39 (1982).

In accordance with these general and well settled principles of law, it would appear that the Laneys are in privity with the Partnership Plaintiffs and are bound by the 1997 Judgment. However, the Court must look to the New Mexico law of partnerships to determine whether the Laneys are, in fact, in privity with the Partnership Plaintiffs and bound by the 1997 Judgment. Under the New Mexico Uniform Partnership Act ("UPA"), partners are jointly and severally liable for obligations of a partnership. N.M. Stat. Ann. 1978 § 54-1A-306(a). Additionally, each

partner is an agent of the partnership for the purpose of the partnership's business. § 54-1A-301(1). However, "a judgment against a partnership is not by itself a judgment against a partner." § 54-1A-307(c).

The courts of the State of New Mexico have not had an opportunity to interpret this provision of the UPA. When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule. Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002); Lampkin v. Little, 286 F.3d 1206, 1210 (10th Cir. 2002). In enacting the UPA, the State of New Mexico adopted the Revised Uniform Partnership Act (RUPA). The Uniform Comment to Section 307 of the RUPA states:

> Subsection (c) provides that a judgment against the partnership is not, standing alone, a judgment against the partners, and it cannot be satisfied from a partner's personal assets unless there is a judgment against the partner. Thus, a partner must be individually named and served, either in the action against the partnership or in a later suit, before his personal assets may be subject to levy for a claim against the partnership. RUPA leaves it to the law of judgments, as did the UPA, to determine the collateral effects to be accorded a prior judgment for or against the partnership in a subsequent action against a partner individually.

Rev. Unif. Partnership Act § 1-307 Comment 3. California has also adopted the RUPA. See Cal. Corp. Code § 16101 et seq. In In re Galletti, 314 F.3d 336 (9th Cir. 2002), the United States Court of Appeals for the Ninth Circuit interpreted Cal. Corp. Code § 16307 which was adopted from the same provision of RUPA as N.M. Stat. Ann. 1978 § 54-1A-307. The Ninth Circuit found that general partners were not individually obligated to pay a tax assessment against a partnership because the IRS had not obtained judgments against the individual partners for the partnership debt. Galletti, 314 F.3d at 336.

Given the above, it is relevant to the issue of the binding effect on the Laneys of the 1997 Judgment that this is an action to enforce the Judgment rather than a new action naming the Laneys as parties and seeking a Judgment against them individually.  Pursuant to a strict, technical interpretation of the UPA, New Mexico courts would likely find that individual partners such as the Laneys may not normally be held bound by a judgment against a partnership absent an actual judgment against the individual partners.  This is so even given that, in a new action seeking a Judgment against the individual partners, the law of judgments would give preclusive effect to a judgment against the partnerships.  See Rev. Unif. Partnership Act § 1-307 Comment 3; Restatement (Second) Judgments § 39.

The New Mexico UPA provides that principles of law and equity supplement the UPA. N.M. Stat. Ann. 1978 § 54-1A-104(a).  New Mexico courts are clear that principles of equity regard substance rather than form.  Skaggs Drug Center v. General Elec. Co., 315 P.2d 967, 974 (N.M. 1957).  Equity is a synonym of right and justice with which mere technicality cannot interfere.  See Cooper v. Otero, 29 P.2d 341 (N.M. 1934); Ortiz v. Lane, 590 P.2d 1168 (N.M. App. 1979).  No person may obtain advantage by his own wrong.  Tomlinson v. George, 61 P.3d 195, 200 (N.M. App. 2002).  Equity will no sanction an unconscionable result merely because it may have been brought about by means which simulate legality.  Ontiveros Insulation Co., Inc. v. Sanchez, 3 P.3d 695, 699 (N.M. App. 2000).

In this case, the Laneys' various filings, including but not limited to the filing of documents attempting to create in the Partnership Plaintiffs a fee interest in the disputed lands, the filing of deeds from the Partnership Plaintiffs to the Laneys, and the filing of  Notices of Dissolution of Partnership nearly three months after the United States filed its Motion for Order

to Show Cause appear to the Court as pure chicanery. The Laneys probably believe they have engaged in artful, cunning and shrewd legal maneuvers. However, the tactics used by the Laneys, especially in light of their timing, are merely a duplicitous attempt to evade the operation and effect of this Court's Orders and the judgment of the Tenth Circuit.

Given the particular facts and circumstances of this case, I predict the New Mexico Supreme Court would not interpret the UPA as preventing the 1997 Judgment having a binding effect on the Laneys individually even absent a judgment against them individually. While a court acting in equity cannot contradict or contravene the law, Edgar v. Baca, 1 N.M. 613 (N.M. Terr. 1875), finding that the Laneys are bound by the 1997 Judgment does not do so in this case. The UPA provides that a partnership is formed when two or more persons associate to carry on as co-owners of a business for profit whether or not the persons intend to form a partnership. N.M. Stat. Ann. 1978 § 54-1A-202(a). Kit and Sherry Laney were the sole partners of the Diamond Bar Cattle Company and the Laney Cattle Company. Although various documents filed by the Laneys give the appearance that these partnerships no longer exist, these same documents, the Laneys' conduct and the Laneys' admissions show that the Laneys continue to associate to carry on as co-owners of a business for profit and that the business is the same as that which they engaged in under the names Laney Cattle Company and Diamond Bar Cattle Company. Nothing in substance has changed - only the technical names of the business. Thus, the Laneys, individually, are bound by the 1997 Judgment.

      B.      <u>Are the Laneys Individually Liable for a Violation of the 1997 Judgment?</u>

The UPA provides that "[a] judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the partner." § 54-1A-307(c). The same

15

principles that led to the conclusion that the Laneys are bound by the 1997 Judgment lead to a determination that § 54-1A-307(c) does not prevent liability for the Partnership Plaintiffs being imposed on the Laneys.

As noted, the Partnership Plaintiffs are in contempt for violation of the 1997 Judgment by virtue of their default. Having found that the Laneys may be held personally liable for a judgment or sanction against the Partnership Plaintiffs, the Court could proceed to impose sanctions on the Partnership Plaintiffs, note the Laneys' obligation to comply with injunctive orders and pay sanctions, and decline to address any further issues in this case. However, based on considerations of due process, and in light of the fact that the Partnership Plaintiffs' contempt is based on a default, I decline to hold the Laneys personally liable for any sanctions imposed on the Partnership Plaintiffs absent a finding that the Laneys, personally, are in contempt of this Court. See Nelson v. Adams USA, Inc., 529 U.S. 460 (2000).

The Laneys are entitled to a hearing on the issue whether they are in contempt. Federal Trade Comm'n v. Kuykendall, 312 F.3d 1329, 1337 (10th Cir. 2002) ("civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.") (quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826-28 (1994)). Therefore, the Court will conduct a hearing on December 18, 2003 at 9:30 a.m.[4] to determine whether the Laneys are in contempt of Court for violation of the 1997 Judgment. In a civil contempt proceeding, the party claiming that a court order has been violated has the burden of proving, by clear and convincing evidence, that

---

[4]A separate Notice of Hearing will be sent to parties with regard to the hearing.

16

a valid court order existed, that the alleged contemnor had knowledge of the order, and that the alleged contemnor disobeyed the order.  Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1315 (10th Cir. 1998).  As I have made clear, the ownership and other interests in the Diamond Bar Allotment and Laney Allotment are not an issue before the Court, and the Court will not consider argument on this issue at a civil contempt hearing as it has no bearing on the issue to be addressed.

    **IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE